IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY MICHAEL RECKNER,

      Plaintiff,

            v.

COUNTY OF FAYETTE, FAYETTE
COUNTY PRISON BOARD, LARRY
MEDLOCK, JOSEPH GEORGE YEAGLEY,
BRUCE MCCOMBIE,

      Defendants.

11cv0745
**ELECTRONICALLY FILED**

# MEMORANDUM OPINION RE. DEFENDANTS' MOTION TO DISMISS

## *I.    Introduction*

Presently before this Court is a Motion to Dismiss (Doc. No. 13) Plaintiff, Timothy Reckner's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Said Motion is brought by Defendants County of Fayette ("Fayette County"), Fayette County Prison Board, and Larry Medlock, the Fayette County Warden. Defendants Joseph George Yeagley and Bruce McCombie, both Fayette County Corrections Officers have not filed Motions to Dismiss.[1] In support of their Motion, Defendants contend that Plaintiff's Complaint should be dismissed because: Plaintiff's claims are based in part on an impermissible *respondeat superior* theory, claims arising out of the prison's grievance and investigatory process are not recognized by law, negligence claims fail for a lack of duty and proximate causation, and the remainder of

---

[1] For clarity, when the Court refers to "Defendants" in this Memorandum Opinion, that implies Defendants moving for the Motion to Dismiss, which does not include Joseph Yeagley and Bruce McCombie.

claims lack sufficient factual support. For the reasons that follow, Defendants' Motion to Dismiss (Doc. No. 13) will be granted in part and denied in part.

## II. Factual Background

When reviewing a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts all factual allegations in the Complaint as true and draws all reasonable inferences in Plaintiff's Favor. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Therefore, the facts of the case are as follows:

Reckner was incarcerated at the Fayette County Prison while serving a sentence for Driving Under the Influence ("DUI") and awaiting trial on another DUI charge. Doc. No. 1, ¶ 18. During this time, Reckner was cooperating with the Pennsylvania State Police and Fayette County District Attorney. Id. at ¶ 19. Reckner also worked as a "trustee" at the prison performing maintenance, food, and custodial services. Id. at 20.

From approximately August 17, 2009 until September 2, 2009, Reckner was physically assaulted by Correction Officers McCombie and Yeagley who also would call him a "snitch" and refer to his co-operation with authorities, putting him in danger of retaliation by fellow inmates. Id. at ¶ 22-26. The physical assaults included a September 2, 2009 incident in which the Corrections Officers pushed Reckner into a dumbwaiter and trapped him inside for five to ten minutes. Id. at ¶ 29-33. McCombie and Yeagley threatened Reckner with retaliation if he reported the physical assaults. Id. at ¶ 24. They also informed Plaintiff that if they were reported they would tell their superiors that he had fallen and they wouldn't be disciplined. Id. Reckner's phone service was shut off and a letter to his mother which informed her of his assault was destroyed by Defendant Yeagley. Id. at ¶ 36.

McCombie and Yeagley's conduct was undertaken pursuant to the official policies, practices, or customs, of Fayette County, Fayette County Prison Board and Warden Medlock. Doc. No. 1, ¶ 42. The policies included: operation of a "vastly overcrowded understaffed, underfunded, and antiquated jail facility"; inadequate procedures for the handling of complaints against employees; ignoring reports of misconduct; failing to meaningfully supervise and train its employees; failing to discipline employees for misconduct; tolerating corrections officers' policy of refusing to provide inmates with grievance forms and reading and destroying personal letters; tolerating a "code of silence" among corrections officers; tolerating threats to prevent reporting corrections officer misconduct; failing to provide a means for employees to confidentially report fellow employee misconduct; and tolerating the pervasive practice of corrections officers of disclosing sensitive information about inmates that may cause them to be in physical danger. Id. at ¶ 47 (a)-(l). These Defendants were also deliberately indifferent to the need for more or different training and supervision of the correction officers. Id. at ¶ 46.

### III. Standard of Review

Pursuant to Federal Rule of Civil Procedure 8(a)(2), civil complaints must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.544, 570 (2007)).[2]

---

[2] In *Twombly*, the United States Supreme Court abrogated its decision in *Conley v. Gibson*, 355 U.S. 41 (1957), which allowed dismissal of a claim only if "no set of facts" could be conceived to support it. *Conley*, 355 U.S. at 45.

To survive a motion to dismiss under Rule 12(b)(6), a claim for relief now "'requires more than labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (quoting *Twombly*, 550 U.S. at 555). While Rule 8 was "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit recently explained that a District Court must take three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, No. 10-03539, 2011 WL 2044166, at *2 (3d Cir. May 26, 2011) (quoting *Iqbal*, 129 S. Ct. at 1947, 1950). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950.

In conducting this analysis, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer

evidence in support of the allegations.  *See Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).  In short, a Motion to Dismiss should not be granted if a party alleges facts, which if established at trial, would entitle him to relief.  *Fowler*, 578 F.3d at 563 n.8.

### IV. *Discussion*

Plaintiff's Complaint includes six counts.  Doc. No. 1.  They are as follows: (1) civil rights violations pursuant to 42 U.S.C. §§ 1983 and 1988 against all Defendants; (2) negligence against County of Fayette; (3) assault and battery against Defendants McCombie and Yeagley in their individual capacities; (4) false imprisonment against Defendants McCombie and Yeagley in their individual capacities; (5) conspiracy against Defendants McCombie and Yeagley in their individual capacities; and (6) civil conspiracy against Defendants McCombie and Yeagley in their individual capacities.  Doc. No. 1, 11-22.  This Memorandum Opinion will address Counts 1 and 2 which Defendants seek to dismiss.  Doc. No. 13.

#### A. *Count I: Civil Rights Violations against All Defendants*

Count I of Plaintiff's Complaint details alleged civil rights violations pursuant to 42 U.S.C. §§ 1983 and 1988.  Doc. No. 1, 11-16.  These violations include Defendants' responsibility for their subordinate officers' acts and omissions, deliberate indifference to Plaintiff's constitutional rights, indifference to need for additional or varied officer training, operation of a "vastly overcrowded, understaffed, underfunded, and antiquated jail facility", inadequate procedures for inmates and employees to complain about staff, and failure to properly supervise, investigate and discipline employees' pervasive misconduct.  Doc. No. 1.  Defendants contend that such claims are: (1) based on an impermissible *respondeat superior* theory; (2) claims arising out of the prison's grievance and investigatory process are not recognized by law; (3) Plaintiff's generic "failure to train" theories do not state a viable claim; and (4) *Bell Atlantic*

5

*v. Towmbly*, 550 U.S. 544 (2007) bars the remaining civil rights claims. Doc. No. 14. For clarity, Defendants' arguments and Plaintiff's response thereto will be addressed in turn.

*1. Claims Purportedly Based Upon Respondeat Superior*

Defendants allege that Plaintiff's claims that Defendants are "statutorily responsible for the acts and omissions of their subordinate officers" and that they "failed to discharge their duties[.]" are improperly based upon *respondeat superior*. Doc. No. 14, 5. Plaintiff counters that the Count I as a whole is not premised on *respondeat superior*.

Both parties concede that *Rode v. Dellacriprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) controls this issue. *Rode* states that a defendant "in a civil rights action must have personal involvement in the alleged wrongs . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.*

In the present case, Plaintiff contends that the allegations in paragraph 47(a)-(l) "would show that the Defendants not only acquiesced to the misconduct of the corrections officers, but also had either actual or constructive knowledge or widespread and continued conduct." Review of Plaintiff's Complaint demonstrates factual averments, which if proven, would demonstrate that Defendants had knowledge of and tolerated civil rights abuse in Fayette County Prison. Accord. Doc. No. 1, ¶ 47 (c) "ignoring reports of misconduct on the part of corrections officers by other corrections officers and inmates . . . thereby causing and encouraging corrections officers, including Defendant Corrections Officers in this case, to violate the constitutional rights of the inmates.", ¶ 24 detailing that Defendant Corrections Officers informed Plaintiff that if reported, nothing would happen, presumably because of the alleged "code of silence."). Therefore, Plaintiff's Complaint does not merely allege that Defendants are responsible for their subordinate officers' actions, but rather, that Defendants had knowledge of and permitted

6

widespread misconduct which encouraged and allowed Corrections Officers to violate Plaintiff's civil rights. As such, Claim One is not based upon *respondeat superior*.

2. *Claims Based Upon the Grievance and Investigatory Processes*

The Complaint details that the Defendants allegedly violated Plaintiff's civil rights by "acquiescing and tolerating the pervasive and widespread practice amongst county correctional officers of refusing to provide inmates with grievance forms to report alleged abuse and misconduct of correctional officers, thereby encouraging correctional officers to violate rights." Doc. No. 1, ¶ 47(f). Defendants' liability is also alleged for failing to adequately handle and investigate complaints against employees, including a failure to have a written policy to follow-up on such reports, failing to provide a means for confidential reporting of fellow employee misconduct, and failing to investigate and discipline employees despite "pervasive misconduct." Doc. No. 1, ¶¶ 47(b), (c), (e), (f), (k).

Plaintiff concedes that that "access to prison grievance procedures is not a constitutionally-mandated right." *Simonton v. Tennis*, 2011 WL 2713247 at * 2 (3d Cir. 2011). Defendants argument (Doc. No. 14, 5-7) that these claims fail as a matter of law and therefore, should be dismissed is not persuasive because Plaintiff does not claim that Defendants violated his constitutional rights by denying him access to prison grievance procedures, but rather, alleges that Defendants' refusal to investigate abuse once reported along with Defendant's code of silence and other alleged failures caused Plaintiff's constitutional rights to be violated. Plaintiff has detailed factual averments, which if proven, would demonstrate that Defendants' policy and practices, including a failure to investigate claims of abuse, created a widespread culture which permitted Corrections Officers to violate inmates' constitutional rights without fear of discipline.

7

Furthermore, Count I will not be dismissed because of Plaintiff's allegations that no grievance procedure was available is but one part of Count I, not the foundation of the claim.

### 3. "Failure to Train" Theories

The Complaint alleges that Defendants were "indifferent to the need for more or different training" of employees and that they had a policy, practice or procedure of "failing to meaningfully supervise and train [their] employees." Doc. No. 1, ¶¶, 46, 47(d). Defendants allege that these "generic" theories fail to state a viable claim. As to the County and Prison Board, Defendants allege that in order to sustain a failure to train claim, the deficiency in the training program must have actually caused the constitutional violation. Doc. No. 14, 7. Defendants also contend that the failure to train claim must be dismissed against Warden Medlock. Id. at 8-9.

To sustain a claim for failure to train against a governmental liability, the failure to train must "amount[] to deliberate indifference to the rights of persons whom the police come in contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Furthermore, "the identified deficiency in a [county's] training program must be closely related to the ultimate injury." *Harris*, 489 U.S. at 391. Here, Plaintiff posits that if training had been provided on the importance of reporting the misconduct of other Corrections Officers, "then conceivably the policy-making Defendants could have disciplined them in such a way as to stop such abuse." Doc. No. 20, 9. This is not enough to support a failure to train claim because "failure to train cannot be predicated solely on a showing that the County's employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1029-30 (3d Cir. 1991). There is no showing of deliberate indifference to Plaintiff's constitutional rights because Plaintiff

alleges that Defendants' training program would reduce the risk of constitutional violations, which were not directly caused by the alleged lack of training. Therefore, Plaintiff's failure to train claim against the County and Prison Board will be dismissed, but without prejudice.

Plaintiff also asserts a failure to train claim against Warden Medlock, which alleges that he was deliberately indifferent to issues occurring in the prison and he knew or should have known that training was "necessary to avoid constitutional violations" and was "deliberately indifferent" to the need for further training "thereby causing and encouraging corrections officers in this case, to violate the constitutional rights of inmates." Doc. No. 1, ¶ 47(d). As in Plaintiff's failure to train claim against the County, Plaintiff alleges that the Warden acquiesced violations of Plaintiff's constitutional rights through his deliberate indifference to the need for further training. Id.

The analysis for failure to train claims against an individual defendant is distinct from one against a municipality. Defendants cite *Deemer v. County of Chester*, 2004 WL 1175696 (E.D. May 27, 2004) to support their position. The Court in *Deemer* dismissed a Chief of Police as an individual defendant because the Plaintiff "has not pleaded facts which show that he took any intentional action to subject [him] to deprivation of his civil rights, or, in the words of the Court of Appeals for the Third Circuit in *Rode*, that he personally performed, directed, or knowingly participated in an illegal act. It is not sufficient to allege that an official can be assumed to have taken certain unspecified acts because he had the power to control other Defendants." *Deemer*, 2004 WL 1175696, at * 5, relying on *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) and *Curtis v. Everette*, 489 F.2d 516, 520-21 (3d Cir. 1973). Plaintiff alleges that "if the Defendant Corrections Officers had been properly reported by one of their co-workers, then conceivably the policy-making Defendants could have disciplined them in such

9

a way as to stop the abuse." Doc. No. 20, 9.  This Court's function is to examine the factual averments in Plaintiff's Complaint, not surmise if various scenarios are plausible and finds that the present case is not distinguishable from *Deemer*, 2004 WL 1175696 and that there are not sufficient factual allegations to support a failure to train claim against the Warden.  Therefore, Count I's failure to train claim will be dismissed without prejudice as to Warden Medlock.

4. *Remaining Civil Rights Claims Pursuant to Twombly*

Defendant contends that the remaining claims included in Count I are unsupported and conclusory allegations that are insufficient to state a claim pursuant to *Twombly*, 550 U.S. 44 and *Iqbal*, 129 S.Ct. 1937 (2009).  Doc. No. 14, 9-13.  Based upon the specifics of Plaintiff's alleged assault and the conditions in the prison (while not as specific as they could be), Count I as a whole states enough facts to state a claim of civil rights violations against Defendants that is "plausible on its face."  *Twombly*, 550 U.S. at 570.  See Doc. No. 1, ¶ 18-42, 47(a)-(l).

B. **Count II: Negligence against Fayette County**

Plaintiff contends that Defendant Fayette County "owed a duty to exercise reasonable care with regard to . . . [the] maintenance and design of the Prison's surveillance System", which was breached because the area in which Plaintiff was shoved into the dumbwaiter did not have adequate surveillance.  Doc. No. 1, ¶ 56, 57. Plaintiff further contends that Fayette County was negligent in inspecting and maintaining the dumbwaiter.  Id. at ¶ 58.

The elements of a negligence claim include: a legal duty, a breach of that duty, a causal relationship between the defendant's negligence and plaintiff's injuries and damages.  *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 423 (3d Cir. 2002).   Both Plaintiff and Defendants concede that there is no statutory or case law duty to have a video surveillance of a prison.  37 Pa. Code § 95.220 *et. seq.*, *Williams v. City of Lancaster*, 639 F.Supp. 377 (E.D. Pa.

10

1986). However, Plaintiff contends that there is a common law duty "to the occupiers of their real property to keep them safe from unreasonable risks of assaults, especially in the prison system" and that under the Restatement (Second) of Torts § 449, a party can be held liable for the intentional acts of others. Doc. No. 20, 14.

However, Fayette County cannot be found negligent for failing to have a more comprehensive surveillance system. The casual nexus between a lack of video cameras in the area of the dumbwaiter and the Corrections Officers' alleged abuse of Plaintiff, including pushing him into the dumbwaiter is too tenuous to support the causation requirement. There are also no allegations or factual averments that Defendants had knowledge of the risk that the allegedly inadequate video surveillance system created.

Furthermore, Plaintiff's injuries in the dumbwaiter were allegedly the result of the Correction Officers pushing Plaintiff into the dumbwaiter, not any failure of the dumbwaiter. Doc. No. 1, ¶ 62(k). This "assault" is a superseding cause of Plaintiff's injury and thus proximate causation cannot be established. *See Ford v. Jeffries*, 379 A.2d 111, 115 (Pa. 1977), *Frey v. Smith*, 685 A.2d 169, 173 (Pa. Super. Ct. 1996). Accordingly, Plaintiff's negligence claim against Fayette County does not state a plausible claim for relief and Count II of Plaintiff's Complaint will be dismissed. Such dismissal will be with prejudice because neither negligence claim can be cured by amendment of the Complaint.

## V. *Conclusion*

For the foregoing reasons, Defendants' Motion to Dismiss will be granted in part and denied in part.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All Registered ECF Counsel and Parties